## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

GLEN DALE SUMMERS,               :
AIS 216967,

                                     :

        Petitioner,

                                       :

vs.                                   CA 07-0543-KD-C

                                       :

KENNETH JONES,

                                     :

        Respondent.

## SUBSTITUTED REPORT AND RECOMMENDATION[1]

Glen Dale Summers, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of his March 7, 2001 convictions in the Circuit Court of Baldwin County, Alabama on multiple counts each of first-degree sodomy and first-degree sexual abuse, one count of attempted sexual torture, three counts of contributing to the delinquency of a minor, and one count of distributing pornographic material to a minor. On

---

[1] This Substituted Report and Recommendation is intended to be a corrected recommendation that completely replaces the Report and Recommendation entered on April 11, 2008 (Doc. 17). The Clerk is directed to remove the former Report and Recommendation from the Court record and replace that document with this Substituted Report and Recommendation. The parties are to be afforded an additional ten (10) days from receipt of this substituted opinion in which to file objections. Petitioner, Glen Dale Summers, may incorporate those objections that were filed on April 23, 2008 (Doc. 18) with any additional objections he may have.

March 22, 2001, Summers was sentenced to eight consecutive life sentences with respect to the sodomy convictions, twenty years for attempted sexual torture, ten years on each count of first-degree sexual abuse, and one year imprisonment with respect to each of the four remaining misdemeanor convictions. Petitioner's convictions and sentences were affirmed on appeal by the Alabama Court of Criminal Appeals on November 21, 2001, by unpublished memorandum opinion. On May 2, 2003, the Alabama Supreme Court quashed Summers' petition for writ of certiorari. Summers filed a Rule 32 petition in the Circuit Court of Baldwin County, Alabama collaterally attacking his convictions and sentences on April 27, 2004. The trial court granted in part and denied in the main the petition on February 27, 2006, following two hearings. On December 15, 2006, the Alabama Court of Criminal Appeals affirmed the trial court's disposition of Summers' Rule 32 petition. Petitioner's application for rehearing was overruled by the Alabama Court of Criminal Appeals on March 9, 2007 and, on May 11, 2007, the Alabama Supreme Court denied Summers' petition for writ of certiorari.

In his petition before this Court, filed July 25, 2007, Summers raises the following grounds which he claims entitle him to relief:

(1) the trial court failed to swear in the jury venire;

(2) he was twice placed in jeopardy of life and limb;

(3) the indictment was fatally defective because it charged both felonies and misdemeanors;

(4) trial counsel was ineffective (a) in failing to object or preserve for appeal his double jeopardy claim; (b) in failing to object or preserve for appeal his claim that the indictment contained four misdemeanor charges, along with multiple felony counts; and (c) in failing to object or preserve for appeal the State's failure to establish that the jury was sworn;

(5) the Alabama Court of Criminal Appeals erred in upholding the trial court's denial of petitioner's challenge for cause of a prospective juror;

(6) the Alabama Court of Criminal Appeals erred in upholding the trial court's denial of his motion to suppress;

(7) the Alabama Court of Criminal Appeals erred in upholding the trial court's admission of certain evidence without establishing a sufficient chain of custody; and

(8) the Alabama Court of Criminal Appeals erred in upholding the trial court's action allowing television cameras into the courtroom.

The respondent has admitted that the instant petition has been timely filed and that petitioner has exhausted his state court remedies. (*See* Doc. 12,

at 3 & 12-14) Respondent does claim, however, that this Court is procedurally barred from reaching the merits of Summers' claim that the trial court failed to swear in the jury venire. This case is ripe for a decision by this Court.

This cause is before the Court on the petition and respondent's answer, as supplemented, with attachments. A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required.

## FINDINGS OF FACT

1.      The May, 2000 session of the Baldwin County, Alabama grand jury returned a sixty-one (61) count indictment against Summers. (Doc. 12, Exhibit A, INDICTMENT) Prior to the commencement of trial proceedings on March 5, 2001, a number of counts set out in the indictment were dismissed. (Doc. 12, Exhibit A, T.T. 8-9) The remaining counts were tried to a jury over the course of four days, petitioner's trial ending on March 8, 2001. (*See id.*, Trial Transcript)[2]

2.      The jury convicted Summers of five counts of first-degree sexual

---

[2]      The trial transcript reflects that the petit jury was sworn. (Doc. 12, Exhibit A, T.T. 104 ("Ladies and gentlemen, at this time I need to administer the oath to you. If you would, each raise your right hand. . . . Jury duly sworn by the Court."))

4

abuse, fourteen counts of first-degree sodomy, one count of attempted sexual

torture, three counts of contributing to the delinquency of a minor, and one

count of distributing pornographic material to a minor. (Doc. 12, Exhibit A,

VERDICTS; *see also id.*, T.T. 667-674)

      3.     On March 22, 2001, the trial court sentenced petitioner in the

following manner:

> THE COURT: All right. Mr. Summers, you having been
> convicted, I will go through the individual counts with my
> sentence, a total of twenty-four counts.
>
> Having been adjudged guilty as to each of those counts,
> it is the sentence of the Court as to Count One, which is the
> charge of sex abuse in the first degree . . ., I sentence you to ten
> years in the State penitentiary.
>
> As to Count Five, a charge of sodomy in the first degree,
> I sentence you to the custody of the Department of Corrections
> for life.
>
> As to Count Six, I sentence you to the custody of the
> Department of Corrections for life. That sentence shall run
> concurrent with Count Five.
>
> As to Count Eleven, . . . that being a sodomy first count,
> I sentence you to the Department of Corrections for life.
>
> As to Count Twelve, that being a sodomy first count, I
> sentence you to the Department of Corrections for a period of
> life. That sentence will run concurrent with Count Eleven.
>
> As to Count Fourteen, that charge being attempted sexual
> torture, I sentence you to . . . the Department of Corrections for

a period of twenty years.

As to Count Sixteen, being sodomy in the first degree, I sentence you to the Department of Corrections for life.

As to County Twenty-one, I sentence you to the Department of Corrections for life.

As to Count Twenty-three . . . I sentence you to the Department of Corrections for a period of life.

As to Count Twenty-four, I sentence you to the Department of Corrections for a period of life. That shall run concurrent with Count Twenty-three.

Count Twenty-five, I sentence you to the Baldwin County Jail for a period of one year.

As to Count Twenty-six, I sentence you to the Baldwin County Jail for a period of one year.

As to Count Thirty, I sentence you to the Baldwin County Jail for a period of one year.

Those counts, all three [], . . . shall run concurrent with each other and shall run concurrent with Count Five.

As to Count Thirty-one, I sentence you to the Department of Corrections for a period of ten years.

As to Count Thirty-two, I sentence you to the Department of Corrections for life.

As to Count Thirty-three, I sentence you to the Department of Corrections for life.

Counts Thirty-one, Thirty-two, and Thirty-three shall run concurrent.

6

Count Forty-nine, I sentence you to one year in the county jail. That shall run concurrent with Thirty-three, Thirty-two and Thirty-one.

Count Fifty-one, I sentence you to the Department of Corrections for life.

Count Fifty-two, I sentence you to the Department of Corrections for a period of ten years.

Count Fifty-three, I sentence you to the Department of Corrections for life.

Counts Fifty-one, Fifty-two and Fifty-three shall run concurrent.

Count Fifty-four, I sentence you to the Department of Corrections for life.

Count Fifty-six, I sentence you to the Department of Corrections for a period of ten years.

Count Fifty-seven, I sentence you to the Department of Corrections for life.

Counts Fifty-four, Fifty-six and Fifty-seven shall run concurrent.

Count Sixty-one, I sentence you to the Department of Corrections for a period of ten years.

As to each count, unless I specifically denoted that it would run concurrent with the corresponding count that I mentioned, all other counts not mentioned shall run consecutive.

(Doc. 12, Exhibit A, T.T. 678-682) Therefore, Summers received a total of

eight (8) consecutive life imprisonment terms as a result of his first-degree

sodomy convictions, twenty years imprisonment for attempted sexual torture, ten years imprisonment on each count of first-degree sexual abuse, and a one-year term of imprisonment in the county jail on each count of contributing to the delinquency of a minor and distributing pornographic material to a minor.

4.     The Alabama Court of Criminal Appeals affirmed Summers' convictions and sentences by unpublished memorandum opinion entered on November 21, 2001. (Doc. 12, Exhibit C)

> The facts reveal the following: [A. S., a minor], age 17, testified that she had a sexual relationship for many months with the appellant, Glen Summers. She testified that on one occasion he had [B. W., a minor], age 10, watch them have sex. [C. T., a minor], age 11, testified that Summers made her pull down[] her pants and sit on his kitchen counter, and she said he then "licked my front part." She further testified that "he put his front part into my back part." [T. C., a minor], age 8, testified that she came into the kitchen and saw Summers and [C. T.], and that Summers made [T. C.] touch his private area. [B. W.], age 10, testified that Summers "put his private on mine," and that, "he put his tongue on my front private and he put my mouth on his private." [B. W.] said that [C. T.] and her brother, Mitchell[,] were sometimes present when this occurred. [B. W.] further testified that she witnessed similar acts occur between [C. T.] and Summers through peep holes in his bathroom and bedroom closet.
>
> Pam Wheatley, the mother of [B. W.] and Mitchell, testified that she had a sexual relationship with Summers. On one occasion she said she had sex with Summers and his wife together. Pam stated that one night while staying at Summer[s'] house, she awoke and went downstairs and saw her niece, [C. T.], on her knees in front of Summers with her pants down. She

also saw her other niece sitting on the floor beside her. Summers had a bottle of lotion in one [hand] and a towel near him. Pam testified that upon seeing her Summers went and got a gun and said he was going to shoot himself. Pam managed to get the gun away from him, and called 911. Deputy Harlan Hill responded to the 911 call and arrested Summers.

## I.

On appeal, Summers first argues that the trial court erred in denying the defense's challenge for cause for Juror Martin. Martin was a police officer with the Gulf Shores police department and he stated during voir dire that he would "possibly" believe the testimony of Deputy Mark Langley over that of other witnesses. Contrary to Summers' contention in his brief, Martin did not say that he would be biased simply because a witness was a police officer. In determining whether a veniremember should be excused for cause, the trial court should apply the following test:

> Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. This determination, again, is to be based on the juror's answers and demeanor and is within the sound discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence.

When Martin was asked by the State if he would follow the trial judge's instructions as it relates to the evidence in this case and render a fair verdict, Martin relied, "Yes." Given that the trial judge has the sole discretion to determine whether he believes a juror will be fair and impartial, we find that the trial

court did not err in denying the defense's challenge for cause. Furthermore, even if the trial court had erred, it would have been harmless error, because Martin never served on the jury. Martin was removed from the jury venire by Summers using one of his peremptory strikes. Also, this would have been harmless error because Deputy Langley never testified at trial. Thus, because Martin did not serve on the jury, and because Langley did not testify, Summers could not have been prejudiced in any way. Therefore, even if the trial court had erred in denying defense counsel's challenge for cause, it would have been harmless error.

II.

Next, Summers argues that the trial court erred in admitting statements he allegedly made to Deputy Hill before being Mirandized. Summers contends that Deputy Hill asked him questions before being Mirandized, and that Hill testified to those statements. On direct examination, Deputy Hill testified that Summers gave him a statement.

> Mr. Matheny. After you read him his Miranda [rights], did he make any statements to you?
>
> Deputy Hill.  At that particular time I asked him did he understand and he said he did, and then he made a statement, yes, sir.
>
> Mr. Matheny.  And what did he say to you?
>
> Deputy Hill.  I asked him what was going on. When he said he understood the Miranda [warnings], I said, "What's going on?" He said he was messing with the girl and his girlfriend walked in. I asked him how old was the girl. He said about ten. He went on to say, "I did not make penetration. I was just playing with her."

On cross-examination, defense counsel asked Deputy Hill if he asked Summers any questions before he Mirandized him.

> Mr. Norton.  And after you handcuffed him and before you Mirandized him, you asked him a question, did you not?

> Deputy Hill.  I did.

> Mr. Norton.  You got a response and at that time [before you] Mirandized him.

> Deputy Hill.  That's correct.

Before trial, and after Deputy Hill's testimony, defense counsel made a motion to suppress Deputy Hill's entire testimony on the basis that he answered one of Deputy Hill's questions before being Mirandized. The trial court ruled that any statements made to Deputy Hill prior to be[ing] Mirandized would not be allowed, unless they were spontaneous, and denied his motion to suppress Deputy Hill's entire testimony. A trial court's ruling on a motion to suppress will not be disturbed unless it is palpably contrary to the great weight of the evidence. The trial court's ruling in this case was not contrary to the great weight of the evidence. Thus, the trial court did not err in denying Summer[s'] motion to suppress Deputy Hill's testimony.

### III.

Third, Summers argues that the trial court erred in admitting certain physical evidence without establishing a sufficient chain of custody.

The first item that Summers disputed the chain of custody of was a bottle of Suave lotion. Sergeant Stewart testified that he received the bottle of lotion from Deputy Langley at the scene of the arrest and then took it to the Robertsdale Sheriff's office and locked it in the evidence locker. He stated that it remained

in the locker, with the exception of being removed for disclosure meetings with the defense. Stewart was asked on cross-examination about the 4/4/00 date and his signature on the evidence tag. Stewart stated that [] date was incorrect, and it should have read 4/1/00.

It is well settled that certain requirements must be met in order to establish a proper chain of custody.

The chain of custody is composed of links. A link is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: (1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; [and] (3) [the] safeguarding and handling of the item between receipt and disposition.

If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a missing link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to direct testimony of the link, as to one or more criteria or as to one or more links, the result is a weak link [not a missing or broken link]. When the link is weak, a question of credibility and weight is presented, not one of admissibility.

Proof of [an] unbroken chain of custody is required in order to establish sufficient identification of the item and continuity of

possession, so as to assure the authenticity of the item. In order to establish a proper chain, the State must show to a reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.

Moreover, evidence that an item has been sealed . . . is adequate circumstantial evidence to establish the handling and safeguarding of the item.

Section 12A-21-13, Ala.Code 1975, provides:

Physical evidence connected with or collected in the investigation of a crime shall not be excluded from consideration by a jury or court due to a failure to prove the chain of custody of the evidence. Whenever a witness in a criminal trial identifies a physical piece of evidence connected with or collected in the investigation of a crime, the evidence shall be submitted to the jury or court for whatever weight the jury or court may deem proper. The trial court in its charge to the jury shall explain any break in the chain of custody concerning the physical evidence.

Here, Sergeant Stewart's testimony established that the chain of custody had not been broken, and that proper precautions were taken to ensure that the lotion bottle was in secure custody the entire time.

Summers next argues that [a] sufficient chain of custody was not established for the towel that was taken from his house. Sergeant Stewart testified that the towel was recovered from the kitchen floor of Summer[s'] house, and that he was given the towel by Deputy Langley at the scene. He stated that he took it to the Robertsdale County Sheriff's office and placed it in the evidence locker. Summers argues that the towel's chain of

custody was insufficient because it had no chain of evidence sticker on it. On cross-examination, Sergeant Stewart stated that originally the towel was placed in a standard paper evidence bag, but that it was repackaged, and placed in a plastic bag because of the potential risk of biological hazard. The trial court held that "the chain of custody, although not perfect, that the break in the chain is not an unreasonable break and does not -- does not rise to the level that it would be inadmissible." We agree with the trial court's ruling, and find that the three criteria under Lee were sufficiently met. Thus, the trial court did not err in allowing the lotion bottle and towel to be admitted into evidence.

IV.

Finally, Summers argues that the trial court erred in allowing television cameras in the courtroom. Specifically, Summers contends that the presence of the television camera might have unduly affected the jury.

The trial court allowed the television news media on several occasions during the trial to take silent video clips. The court did not allow the media to film the jury at all.

> [E]ven telecasts of state criminal trials do not violate the due process clause of the Fifth Amendment. There is no per se rule that prohibits television cameras from state courtrooms.

In Jackson v. State, 516 So.2d 726 (Ala.Crim.App. 1985), this Court held that the appellant was not prejudiced by television cameras taking video clips in the courtroom. The issue in the instant case is almost identical to that in Jackson, thus, we find that Summers was not prejudiced by the television cameras, nor was the jury unduly affected. Therefore, the trial court did not err in allowing the media to take silent video clips.

Based on the foregoing, the judgment of the trial court is

14

affirmed.

(*Id.* at 1-7 (most internal citations and quotation marks omitted)) Summers'
petition for writ of certiorari to the Alabama Supreme Court (*see* Doc. 12,
Exhibit D) was quashed as improvidently granted by the Alabama Supreme
Court on May 2, 2003 (Doc. 15, Respondent's Exhibit O).

5.      Summers filed a Rule 32 petition in the Circuit Court of
Baldwin County, Alabama collaterally attacking his convictions and sentences
on April 27, 2004. (Doc. 12, Exhibit E) In his brief filed in support of the
petition, Summers asserted that he was deprived of his constitutional right to
effective assistance of appellate counsel. (*See id.*, Petitioner's Grounds of
Petition)

6.      The trial court conducted two hearings, one on August 12, 2005
and another on October 17, 2005. (*See id.*, Transcripts of Rule 32 Proceedings)
During the hearing on October 17, 2005, the following occurred:

> THE COURT: Let's back up. Your first claim is what?
> Oh, the swearing of the jury.

> THE DEFENDANT: Yes, sir. The jury venire.

> THE COURT: You understand that Judge Reid did that
> at the start of the case in the other court?

> THE DEFENDANT: Well, Your Honor, the case action
> summary is silent to that; so is the record.

(Doc. 12, Exhibit E, October Hearing Tr. at 5)

7.      On February 27, 2006, the trial court entered an order granting

in part and denying in part Summers' Rule 32 petition. (Doc. 12, Exhibit E,

ORDER)

> The defendant filed a Petition for Relief from Conviction which was heard on October 17, 2005. After hearing arguments from the defendant and state, and upon review of the record, the Court finds that the Court did not have jurisdiction on Counts 25, 26 and 30 as those issues lie exclusively in Juvenile Court. Defendant's Motion to set aside those convictions and sentences is GRANTED and those counts are set aside as VOID.
>
> As to all other claims, the Court finds the defendant failed to provide any evidence to support his claims. The petition raises no new issues that were either not raised or could have been raised on appeal. The petition raises no other jurisdictional issues. The petition appears to have been filed over one year after the conviction was made final. Therefore, the petition is DENIED.

(*Id.*)

8.      The Alabama Court of Criminal Appeals affirmed, by

unpublished memorandum decision, the trial court's ruling with respect to

Summers' Rule 32 petition. (Doc. 12, Exhibit I) That opinion reads, in relevant

part, as follows:

> Summers filed his Rule 32 petition on April 27, 2004. In his petition, Summers essentially alleged: (1) that his trial counsel was ineffective for a number of reasons; (2) that his appellate counsel was ineffective for a number of reasons; (3)

16

that a number of his convictions were violative of double-jeopardy principles; and (4) that the trial court lacked jurisdiction to preside over the misdemeanor charges. On June 23, 2005, Summers filed an amendment to his Rule 32 petition wherein he alleged additional facts in support of, and expanding, his assertions that he was denied the effective assistance of counsel at trial and on appeal. After conducting an evidentiary hearing on August 12, 2005, and on October 17, 2005, the circuit court issued an order on February 27, 2006, granting Summer[s'] petition in part and denying his petition in part.

All of Summer[s'] contentions revolve around three underlying claims: first, that the venire was not sworn prior to voir dire; second, that a number of his convictions violate double-jeopardy principles; and third, that his indictment improperly contained misdemeanor offenses. Summers argues these three contentions in terms of the underlying claims themselves as well as ineffective assistance of counsel at trial and on appeal.

## I.

We first examine the underlying substantive issues.

## A.

Summers contends that the trial court lacked jurisdiction to proceed at trial because, he claims, the venire was not sworn prior to voir dire. However, Summers concedes that the petit jury was sworn. Thus, to the extent that Summers argued the merits of this underlying claim separately and in addition to his ineffective-assistance-of-counsel claims, this is a nonjurisdictional claim subject to the procedural bars in Rule 32.2, Ala.R.Crim.P. As such, this claim is precluded because it could have been, but was not, raised and addressed at trial and on appeal.

## B.

17

Summers also contends that the trial court lacked jurisdiction to try the cases because misdemeanor offenses were contained in the felony indictments. The circuit court granted Summer[s'] petition in part, holding that the trial court lacked jurisdiction to preside over the contributing-to-the-delinquency-of-a-minor charges, as jurisdiction over those offenses was exclusively in juvenile court; thus, the circuit court vacated Summer[s'] convictions and sentences for contributing to the delinquency of a minor.

With regard to the remaining misdemeanor conviction, i.e., distributing pornographic material to a minor, that offense was properly within the jurisdiction of the trial court as a misdemeanor violation that arose from the same incident as a felony charge. Therefore, contrary to Summer[s'] assertion, the trial court did have jurisdiction to preside over the misdemeanor charge of distributing pornographic material to a minor.

## C.

Summers further argues that a number of his convictions run afoul of double-jeopardy principles.

To the extent that Summers argues that his convictions for sexual abuse and sodomy arose from a single event, that contention raises questions of constitutional double-jeopardy principles, rather than jurisdictional double-jeopardy principles. Thus, that claim is barred because it could have been but was not raised at trial and on appeal.

To the extent that Summers argues that his convictions for sexual abuse were lesser-included offenses of first-degree rape and first-degree sodomy, Summers is partially correct. The sexual-abuse convictions were lesser included offenses of the first-degree rape charges contained in the indictment. However, Summers was not convicted of first-degree rape; rather, the jury convicted him of the lesser-included offense of sexual abuse. Thus, no double-jeopardy problem arises with respect to the

rape <u>charges</u> and sexual abuse <u>convictions</u>.

Finally, with respect to the correlation between the sexual-abuse convictions and sodomy convictions, the sodomy convictions were returned upon the jury's concluding that the State had proven that Summers had committed separate acts of deviate sexual intercourse with the victim on each occasion, while the sexual-abuse convictions were returned based upon the jury's conclusion that Summers had committed different acts that did not amount to rape, but did amount to sexual contact. Summers did not plead or prove specific or sufficient facts showing that the sexual-abuse convictions in this case were lesser-included offenses of the sodomy convictions. Further, it is well settled that separate sentences for multiple offenses committed during the same course of conduct are permissible.

## II.

Summers claims that his appellate counsel was ineffective for not alleging on appeal that trial counsel was ineffective for failing to object on the ground that the jury venire was not sworn prior to voir dire, for failing to argue that a number of his convictions were violative of double-jeopardy principles, and for failing to challenge the inclusion of misdemeanor offenses in the felony indictment.

In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of showing (1) that his counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. Furthermore, "a court must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance." 466 U.S. at 689.

> Additionally, because ineffective-assistance-of-trial-counsel claims were not preserved for appellate review, [petitioner's] appellate counsel is not ineffective for not challenging trial counsel's performance. Counsel cannot be ineffective for failing to raise a[] meritless issue. Thus, [petitioner] has not met the requirements set forth in <u>Strickland</u> to establish that appellate counsel was ineffective.

In <u>V.R. v. State</u>, 852 So.2d 194 (Ala.Crim.App. 2002), this Court explained:

> Therefore, we hold that a defendant is not precluded by Rule 32.2(a)(3) and (5) from raising an ineffective-assistance-of-trial-counsel claim for the first time in a Rule 32 petition if the trial transcript was not prepared in time for appellate counsel to have reviewed the transcript to ascertain whether such a claim was viable and to present the claim in a timely filed motion for a new trial. <u>It is neither reasonable nor practical to expect newly appointed appellate counsel to raise an ineffective-assistance-of-trial-counsel claim without the benefit of a trial transcript to document and support a defendant's allegations as to what occurred during trial.</u>

This Court further explained in <u>Bracknell v. State</u>, 883 So.2d 724 (Ala.Crim.App. 2003):

> The language used in <u>V.R.</u> . . . was clear and not limited to the particular facts of that case. <u>As a matter of law, it is not reasonable for appellate counsel to file a motion for a new trial raising</u>

ineffective-assistance-of-trial-counsel claims without the benefit of the trial transcript. To hold otherwise would encourage the filing of motions for a new trial based solely on a defendant's bare and self-serving allegations that may or may not be supported by facts reflected in the trial transcript. Appellate counsel cannot make an informed decision about the merits of possible ineffective-assistance-of-trial-counsel claims without knowing what actually occurred during trial, and this Court will not encourage the filing of motions that may turn out to be frivolous because they are not based on fact, but, rather, on a defendant's self-serving allegations.

The direct-appeal record indicates that Summers was sentenced on March 22, 2001. However, the transcript of Summer[s'] trial was not certified as complete until July 2, 2001, long after the 30-day time limit for filing a motion for a new trial had lapsed. Thus, as a matter of law, Summer[s'] appellate counsel was not ineffective for not raising in a motion for a new trial the numerous grounds of ineffective assistance of trial counsel that Summers claims should have been raised.

III.

Summers further argues that his appellate counsel was ineffective for not raising on direct appeal the underlying substantive issues, i.e., that the venire was not sworn prior to voir dire and that a number of his convictions were violative of double-jeopardy principles. However, those underlying claims were not first presented to the trial court by timely objection. It is well settled that counsel could not be ineffective for failing to raise a baseless objection. As we explained in Part I of this memorandum, those substantive issues as presented in this case are not jurisdictional, and, therefore, appellate counsel was not ineffective for failing to present for appellate review unpreserved nonjurisdictional claims.

IV.

Finally, Summers argues that his trial counsel was ineffective for not raising the three substantive claims discussed in Part I of this memorandum. However, Summers failed to plead or prove sufficient or specific facts showing that his counsel's performance was deficient or that he was prejudiced by counsel's performance. Neither Summers's trial counsel nor his appellate counsel testified at the evidentiary hearing. Further, with regard to the swearing of the venire, the circuit court noted during the second evidentiary hearing that before Summers's trial, another circuit court judge had sworn the entire jury venire for that court term. Additionally, as is noted in Part I of this memorandum, the circuit court dismissed the contributing-to-the-delinquency-of-a-minor convictions and sentences, and Summers's underlying substantive claim regarding the remaining misdemeanor conviction was without merit. Finally, as for the double-jeopardy allegations, as has been discussed more fully in this memorandum, Summers failed to plead or prove specific or sufficient facts showing that his double-jeopardy claim was meritorious. Thus, because he failed to plead or prove sufficient or specific facts showing ineffective assistance of trial counsel, and, further, because his claims were meritless, Summers is not entitled to any relief on this claim.

Based on the foregoing, the judgment of the circuit court is affirmed.

(Doc. 12, Exhibit I, at 2-8 (internal quotation marks and footnotes omitted; most internal citations omitted)) Petitioner's application for rehearing (Doc. 12, Exhibit J) was overruled on March 9, 2007 (Doc. 12, Exhibit K) and his petition for writ of certiorari to the Alabama Supreme Court (Doc. 12, Exhibit L) was denied on May 11, 2007 (Doc. 12, Exhibit M).

## CONCLUSIONS OF LAW

### A.   Procedural Default Doctrine.

1.     In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Id.* at 729, 111 S.Ct. at 2553-2554.  This rule applies whether the state law ground is procedural or substantive.  *Id.* at 729, 111 S.Ct. at 2554.  The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id.* at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in

a manner not permitted by state procedural rules is barred from pursuing the

same claim in federal court absent a showing of cause for and actual prejudice

from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S.1061,

115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment

rests on independent and adequate state procedural grounds." *Coleman*, 501

U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

     2.    The application of the independent and adequate state ground

doctrine in the habeas context is grounded in concerns of federalism and

comity. *Id.*

> Without the rule, a federal district court would be able to do in
> habeas what this Court could not do on direct review; habeas
> would offer state prisoners whose custody was supported by
> independent and adequate state grounds an end run around the
> limits of this Court's jurisdiction and a means to undermine the
> State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

     3.    An additional consideration comes to the fore when the

independent and adequate state ground supporting a petitioner's custody is a

state procedural default. *Id.* at 731, 111 S.Ct. at 2554. The Supreme Court has

long held

> that a state prisoner's federal habeas petition
> should be dismissed if the prisoner has not
> exhausted available state remedies as to any of his

24

federal claims.    (citations omitted)   This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

.        .        .

[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted)    In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.    The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

4.    In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'"  *Id.* at 735, 111

25

S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar.").  In all other cases, the presumption is not applicable.  *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559.  In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts.  *Id*. at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").   Moreover, the presumption "looks through" unexplained orders to the last reasoned decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.  If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*, 501 U.S., at 740, 111 S.Ct., at 2559, we will presume that no procedural default has been invoked by a

> subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594. Also, the presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue." *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

5.     When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will

result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.  The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. (citation omitted).  Objective factors that constitute cause include "'interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." (citation omitted).  In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." (citation omitted).  Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. (citation omitted).  Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains." (citation omitted).

> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default.  These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.  We have described this class of cases as implicating a fundamental miscarriage of justice. (citation omitted).

28

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

6.     In his answer, respondent asserts that Summers' claim that the trial court failed to properly swear in the jury venire prior to *voir dire* is barred under Rules 32.2(a)(3) and (5) of the Alabama Rules of Criminal Procedure because the claim was not raised at trial or on appeal. (Doc. 12, at 14-15)

7.     It is clear to the undersigned that Summers has procedurally defaulted his jury venire claim because he did not raise it at trial or on direct appeal. Turning to the issue of cause and prejudice, petitioner filed no substantive reply to the answer of the respondent; therefore, it is found that the cause and prejudice exception to the procedural default doctrine is not applicable in this case. *See Macklin v. Singletary*, 24 F.3d 1307, 1313 (11th Cir. 1994) (in abuse of the writ case, appellate court suggests that habeas courts need perform no analysis when the petitioner fails to argue an exception to application of the doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995); *Tower v. Phillips*, *supra*, 7 F.3d at 211 (court addressed only the single cause argument proffered by the petitioner).[3]

---

[3]     Even if this Court was to assume that cause exists for the default of petitioner's jury venire claim, petitioner would not be entitled to a merits-review of this claim by this Court because he cannot establish prejudice. Specifically, the record in this case indicates that the entire jury venire was sworn by Judge Reid in another courtroom prior to the selection of

8.      The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the *Murray v. Carrier* standard. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Summers to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S. at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id*. at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is

---

Summers' petit jury. (Doc. 12, Exhibit E, October 17, 2005 Rule 32 Hearing, at 5) Therefore, prejudice has not been established. *See* Ala.R.Crim.P. 12.1(c)(2) ("On the opening day of the term, or on such other day as the venire shall have been summoned to appear, the judge presiding shall proceed to organize the court, by: Administering or causing to be administered to the jurors the following oath as required by law: 'Do you and each of you solemnly swear or affirm that you will well and truly answer all questions propounded to you touching your general qualifications as a juror, or qualifications as a grand juror or petit juror, and that you will well and truly try all issues and execute all writs of inquiry submitted to you and true verdicts render according to the law and evidence, so help you God?'").

more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Summers has not come forward with any evidence which establishes his actual innocence and thereby undermines his multiple sex-crime convictions. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

### B.     Merits Discussion of Remaining Claims.

9.     Summers filed his petition for habeas corpus relief in this Court on or about July 25, 2007, and therefore, his case clearly is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000); *Bottoson v. Moore*, 234 F.3d 526, 530 (11th Cir. 2000), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001).  As amended, § 2254 now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[4]

28 U.S.C. § 2254(d)(1) & (2) (footnote added).  Moreover, the Act, as amended, presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

10.    In *Williams v. Taylor, supra*, the Supreme Court held that § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied— the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under

---

[4]    Based upon the facts as found by the Alabama courts in their decisions, it is clear that no argument can be made that the decisions of any of those courts was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts. More to the point, since this Court must presume as correct the determinations of all factual issues made by the Alabama courts, petitioner simply cannot rebut that presumption of correctness by clear and convincing evidence. The state courts' findings are based upon what a reasonable jury could have found the evidence to be.

the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 412-413, 120 S.Ct. at 1523; *see Bottoson, supra*, 234 F.3d at 531 ("In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'").

11.     In this case, respondent acknowledges that the Alabama courts reached the merits of petitioner's remaining claims. (Doc. 12, at 15-26) Summers cannot establish his entitlement to relief under § 2254(d)(1) & (d)(2) with respect to any of these issues. In this regard the undersigned notes generally that petitioner has not and cannot show, under the "contrary to" clause, that the Alabama courts, arrived at any conclusions opposite to those

reached by the Supreme Court of the United States on any question of law or decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts. Moreover, as indicated above, under the "unreasonable application" clause, petitioner has not and cannot establish that the Alabama courts, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case.

12.     The Alabama Court of Criminal Appeals, in its decision on collateral review, specifically recognized the applicability of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to petitioner's claims of ineffective assistance of trial and appellate counsel,[5] and, with respect to the challenge made here, reasonably applied the principles outlined in that case to the facts of petitioner's case in finding that counsel did not provided constitutionally ineffective assistance at trial. (*See* Doc. 12, Exhibit I, at 7-8)

13.     Petitioner's claim that there was a double jeopardy violation because he "could not be convicted of sexual abuse in the first degree and rape

---

[5]     This Court does not read Summers' habeas corpus petition, as does the respondent (Doc. 12, at 2-3), as challenging his appellate counsel's assistance as nowhere in the petition filed with this Court does he discuss appellate counsel's performance (Doc. 1).

in the first degree[]" (Doc. 1, at 7), was discussed and rejected by the Alabama Court of Criminal Appeals on collateral review. While that court, in its decision, did not specifically cite to *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),[6] it is clear from a reading of the decision that the court was well aware of the guiding principles set down by the Supreme Court in the *Blockburger* case in reaching its decision on petitioner's double jeopardy claim. *Compare Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) ("Avoiding these pitfalls does not require citation to our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") *with* Doc. 12, Exhibit I, at 4 ("To the extent that Summers argues that his convictions for sexual abuse were lesser-included offenses of first-degree rape and first-degree sodomy, Summers is partially correct. The sexual-abuse convictions were lesser included offenses of the first-degree rape

---

[6]      "In determining whether successive prosecutions involve the same offense within the meaning of the Double Jeopardy Clause, this court is guided by the test announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), wherein the Supreme Court held that two offenses are the same unless each requires proof of an additional fact which the other does not. . . . By definition, therefore, a greater offense is the same as any lesser offense included within it since it is invariably true that the lesser offense requires no proof beyond that which is required for the greater one." *Beverly v. Jones*, 854 F.2d 412, 414 (11th Cir. 1988) (citation omitted), *cert. denied*, 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989).

charges contained in the indictment. However, Summers was not convicted of first-degree rape; rather, the jury convicted him of the lesser-included offense of sexual abuse. Thus, no double-jeopardy problem arises with respect to the rape <u>charges</u> and sexual abuse <u>convictions</u>."). Petitioner cannot and has not shown that the Alabama Court of Criminal Appeals unreasonably applied any relevant precedent with respect to this issue nor is it debatable among reasonable jurists that the result of which petitioner complains is incorrect. Stated differently, it is not debatable among reasonable jurists that the appellate court's rejection of petitioner's double jeopardy argument is inherently incorrect.[7]

14.     Petitioner's contention that the indictment in his case was fatally defective because it charged both felonies and misdemeanors must fail. "The sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of

---

[7]     A review of Alabama law makes clear that first-degree sexual abuse is a lesser included offense of first-degree rape. *Ex parte Benefield*, 932 So.2d 92, 93 (Ala. 2005) ; *see also Sellers v. State*, 624 So.2d 686, 687 (Ala.Crim.App. 1993) ("Sexual abuse in the first degree is a lesser included offense of rape in the first degree."). In this case, as noted by the Alabama Court of Criminal Appeals, petitioner was not convicted of first-degree rape; instead, he was convicted on several counts of first-degree sexual abuse. In other words, there is nothing to show that petitioner was convicted of a greater and lesser-included offense arising out of the same transaction. Accordingly, petitioner has no basis to argue that he was convicted of first-degree rape and first-degree sexual abuse.

jurisdiction." *Heath v. Jones*, 863 F.2d 815, 821 (11th Cir. 1989) (citation omitted). As noted by the Alabama Court of Criminal Appeals, the trial court was not deprived of jurisdiction in this matter because it vacated Summers' convictions and sentences for contributing to the delinquency of a minor and properly concluded that the offense of distributing pornographic material to a minor was within its jurisdiction "as a misdemeanor violation that arose from the same incident as a felony charge." (Doc. 12, Exhibit I, at 3) Alabama law grants to the circuit court original jurisdiction over those misdemeanors that are "lesser included offenses under a felony charge or that arise out of the same incident as a felony charge[.]" *Henderson v. State*, 616 So.2d 406, 407 (Ala.Crim.App. 1993); *see also* Ala.Code § 12-11-30(2) ("The circuit court shall have exclusive original jurisdiction of all felony prosecutions and of misdemeanor or ordinance violations which are lesser included offenses within a felony charge or which arise from the same incident as a felony charge[.]"); Ala.R.Crim.P. 2.2(a) ("All felony charges and misdemeanor or ordinance violations which are lesser included offenses within a felony charge or which arise from the same incident as a felony charge shall be prosecuted in circuit court[.]"). Based upon the foregoing, the decision of the Alabama Court of Criminal that the trial court was not deprived of jurisdiction was not incorrect.

15.    Petitioner's contention that the Alabama Court of Criminal Appeals erred in upholding the trial court's denial of his challenge for cause regarding a prospective juror also fails. The Eleventh Circuit's decision in *Heath v. Jones*, 941 F.2d 1126 (1991), *cert. denied*, 502 U.S. 1077, 112 S.Ct. 981, 117 L.Ed.2d 144 (1992), disposes of petitioner's claim in this regard.

> A prospective juror must be removed for cause if his or her views "'would prevent or substantially impair the performance of his [or her] duties as a juror.'" This Circuit has held that the question of whether a juror was in fact biased is a question of fact. A habeas petition will be granted for a state trial court's failure to strike a juror for cause only when there is not fair support in the record for the trial court's determination that the juror was unbiased. . . . [E]ven if a veniremember should have been struck for cause, the Supreme Court in *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), held that there is no constitutional violation where the biased veniremember does not eventually sit on the jury. The Court in *Ross* held that a habeas petitioner's constitutional rights were not violated when he was forced to waste a peremptory challenge to remove a veniremember whom the court should have removed for cause. Therefore, in this habeas petition, Heath can raise only the trial court's denials of Heath's challenges for cause of those veniremembers who eventually sat on the jury.

*Id.* at 1132-1133 (internal citations omitted). In this case, as the decision of the Alabama Court of Criminal Appeals on direct appeal clearly establishes, Juror Martin did not serve on the jury struck to try Summers. (Doc. 12, Exhibit C, at 3) Therefore, petitioner's constitutional rights were not violated and he has

38

no viable issue to raise on habeas corpus.

16.     Petitioner next makes the conclusory claim that the Alabama Court of Criminal Appeals erred in upholding the trial court's denial of his motion to suppress. The decision on direct appeal reflects the court's recognition of the applicability of *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily,

knowingly and intelligently."), that court agreeing with the trial court's determination which allowed Deputy Hill to testify about statements made by Summers after he was informed of his *Miranda* rights but disallowing any "statements made to Deputy Hill prior to be[ing] Mirandized[.]" (Doc. 12, Exhibit C, at 4) Petitioner has not shown that the Alabama courts unreasonably applied the principles set out in *Miranda, supra*, to the facts in his case nor has he established that the conclusion reached by those courts was opposite to that reached by the Supreme Court in *Miranda* or its progeny. Accordingly, petitioner is not entitled to habeas relief on the basis of this claim.

17.    Summers next contends that the Alabama Court of Criminal Appeals erred in upholding the admission of certain evidence without establishing a sufficient chain of custody. The Alabama courts found that a sufficient chain of custody was established. (*See* Doc. 12, Exhibit C, at 6) It is clear that federal habeas courts are generally not "'empowered to correct erroneous evidence rulings of state trial courts.'" *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir.) (citation omitted), *cert. denied*, 525 U.S. 963, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998); *see Keno v. Crosby*, 2006 WL 2711599, *8 (M.D. Fla. 2006) ("For the most part, evidentiary rulings simply do not raise questions of a constitutional magnitude.").

> Nevertheless, when a state trial court's evidence rulings deny a habeas petitioner fundamental constitutional protections, this [c]ourt's duty requires it to enforce the constitution's guarantees by granting the petition for a writ of habeas corpus. Before relief can be granted the error must rise to the level of a denial of fundamental fairness. Such fundamental unfairness violates the Due Process Clause of the Federal Constitution.
>
> A denial of fundamental fairness occurs whenever the improper evidence is material in the sense of a crucial, critical, highly significant factor.

*Snowden, supra* (internal citations and quotation marks omitted). Petitioner has made no showing, by citation to case law, etc., that any improper evidence was admitted by the trial court. Therefore, the evidentiary rulings made in his case relating to the admission of the Suave lotion bottle and towel do not raise questions of constitutional magnitude. Accordingly, the undersigned simply cannot find that the state courts' adjudications of this issue were contrary to relevant case law nor can it be found that the state court unreasonably applied relevant precedent. Moreover, it is not debatable among reasonable jurists that the result of which petitioner complains is incorrect. Stated differently, it is not debatable among reasonable jurists that the appellate court's rejection of petitioner's chain of custody arguments was inherently incorrect.

18. Finally, Summers argues that the Alabama Court of Criminal Appeals erred in upholding the trial court's ruling which allowed television

cameras into the courtroom. In this regard, the appellate court concluded that petitioner "was not prejudiced by the television cameras, nor was the jury unduly affected." (Doc. 12, Exhibit C, at 7; *see also id*. ("Therefore, the trial court did not err in allowing the media to take silent video clips."))

> [W]e conclude that *Estes* [*v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965)] is not to be read as announcing a constitutional rule barring still photographic, radio, and televison coverage in all cases and under all circumstances. It does not stand as an absolute ban on state experimentation with an evolving technology, which, in terms of modes of mass communication, was in its relative infancy in 1964, and is, even now, in a state of continuing change.

> Since we are satisfied that *Estes* did not announce a constitutional rule that all photographic or broadcast coverage of criminal trials is inherently a denial of due process, we turn to consideration, as a matter of first impression, of the appellants' suggestion that we now promulgate such a *per se* rule.

> Any criminal case that generates a great deal of publicity presents some risks that the publicity may compromise the right of the defendant to a fair trial. Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law. Over the years, courts have developed a range of curative devices to prevent publicity about a trial from infecting jury deliberations.

> An absolute constitutional ban on broadcast coverage of trials cannot be justified simply because there is a danger that, in some cases, prejudicial broadcast accounts of pretrial and trial events may impair the ability of jurors to decide the issue of guilt or innocence uninfluenced by extraneous matter. The risk

of juror prejudice in some cases does not justify an absolute ban on news coverage of trials by the printed media; so also the risk of such prejudice does not warrant an absolute constitutional ban on all broadcast coverage. A case attracts a high level of public attention because of its intrinsic interest to the public and the manner of reporting the event. The risk of juror prejudice is present in any publication of a trial, but the appropriate safeguard against such prejudice is the defendant's right to demonstrate  that the media's coverage of his case–be it printed or broadcast–compromised the ability of the particular jury that heard the case to adjudicate fairly.

*Chandler v. Florida*, 449 U.S. 560, 573-575, 101 S.Ct. 802, 809-810, 66 L.Ed.2d 740 (1981) (internal citations & footnote omitted; emphasis in original). It was as clear to the Alabama Court of Criminal Appeals, as it is to this Court, that Summers has failed to come forward with any evidence which suggests, much less establishes, that the media's coverage of his case compromised the ability of his jury to adjudicate fairly. Therefore, as with all of petitioner's other claims,[8] the undersigned cannot find that the state court's adjudication of this issue was contrary to relevant case law nor can it be found

---

[8]     As previously indicated, Summers' claim that the trial court erred in failing to swear in the entire jury venire has no merit because the evidence of record establishes that the venire was properly sworn. Moreover, even assuming the venire was not sworn, petitioner cannot establish a constitutional violation viable in habeas corpus because the petit jury was sworn and the trial court, therefore, was not deprived of jurisdiction since no party objected to the failure to swear in the venire. *Ex parte Benford*, 935 So.2d 421, 430 (Ala. 2006) ("Applying the law to the facts of the case before us, we conclude that, even if the trial court did not administer the oath to the venire before voir dire began, the record clearly reflects that the trial court administered the oath to the petit jury that was selected to try the case. Therefore, unless one of the parties objected to the failure to swear in the venire, that error is waived.").

43

that the state court unreasonably applied relevant precedent. Moreover, it is not debatable among reasonable jurists that the result of which petitioner complains is incorrect. Stated differently, it is not debatable among reasonable jurists that the appellate court's rejection of petitioner's television coverage argument was inherently incorrect.

## **CONCLUSION**

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for habeas corpus relief should be denied.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 29th day of April, 2008.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)©; *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.


s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE